## DEITRICK v. GREENBERG.
### No. 6455.

District Court, D. Massachusetts.
June 9, 1936.

A. J. Aldridge and Leo Wyman, both of Boston, Mass., for plaintiff.

James M. Graham and Kopelman & Kopelman, all of Boston, Mass., for defendant.

SWEENEY, District Judge.

This is an action in contract to recover a balance due on a loan alleged to have been made by the plaintiff to the defendant. The defendant generally denies the plaintiff's claim, pleads payment, and sets up the statute of limitations as a bar to the action.

The facts are as follows: The Federal National Bank ceased doing business December 15, 1931, at which time a receiver was appointed to take charge of its assets. On December 31, 1934, the plaintiff in this action was named the receiver of this bank, and in that capacity brings this action.

On October 23, 1924, the Federal National Bank (hereinafter referred to as the bank) loaned the defendant $35,000. This loss, evidenced by the defendant's note, and secured by an assignment of a second mortgage on property located at Nos. 1298–1302 Commonwealth avenue, Boston, was renewed from time to time, and on October 22, 1925, was increased to $40,000. It was subsequently renewed many times, and on April 5, 1929, was paid by defendant's check drawn on the plaintiff bank. On the same day the defendant received from one Berenson, by indorsement, a check in the amount of $38,000 which he deposited in his checking account in the plaintiff bank.

The history of the Berenson check is as follows: At the request of the defendant, Berenson went to the registry of deeds on April 5, 1929, "to sign some papers." There he met the defendant, Myer Simon, whom he had not previously known, and a man by the name of Winslow. Winslow, it appears, was a notary public. Without any previous arrangement with either Simon or his wife, and at the request of the defendant, Berenson indorsed a note made by Myer and Lottie Simon, payable to Theodore W. Berenson, and signed an assignment of a second mortgage made by Myer and Lottie Simon to Theodore W. Berenson, covering premises at Nos. 1298–1302 Commonwealth avenue, Boston, to the bank. Berenson then indorsed a check drawn on the bank to his order in the amount of $38,000 and turned it over to Simon. Simon then indorsed it to the order of the defendant, who in turn deposited it to his own credit with the bank. Berenson received nothing from the transaction, and it was only by identifying his signatures at the trial that he could determine the nature of the papers that he had signed. Myer and Lottie Simon, the makers of the note, from time to time made payments on the principal of the note to the bank, and there is now outstanding the balance of $11,500.

Berenson's services in the transaction at the registry were obtained by the defendant. Berenson had not previously met any of the other parties, and was not acquainted with even the most superficial details of the transaction. He went to the registry, purely to accommodate Greenberg, and signed whatever papers were placed before him. He was obviously the defendant's dummy, and signed the papers for the accommodation of the defendant. No one doubts that the defendant received the $38,000 advanced by the bank, and promptly paid off his old indebtedness to the bank. The president of the bank testified that the Simon note to Berenson was purchased by the bank. The bank records indicate, however, that it carried the matter as a loan to Berenson. It is to be noted here that although the bank records indicate that it had made a loan to Berenson, it had failed or neglected to obtain Berenson's personal note

running to the bank. From the above, and considering the provisions of the law concerning investments of national banks (see 12 U.S.C.A. § 371), I conclude that on April 5, 1929, the defendant, owing the bank $40,000, sought to discharge his own liability by substituting therefor the liability of Berenson, secured by the Simon mortgage on the same property that had previously been put up as collateral on the original loan. The defendant received the full benefit of the bank's advancement of the $38,000 to Berenson, and had full knowledge of all the details of the transaction between the bank, Berenson, and the Simons. As between the parties, Berenson never intended to pay the bank anything, and was merely acting as a conduit for the transfer of the money from the bank to the Simons, and thence to the defendant. As a result of this transaction, the defendant received $38,000 from the bank. Whether or not Berenson was the agent of Greenberg in receiving the money under a theory of an undisclosed principal, or whether Greenberg was merely using Berenson as his dummy in order to effect his release from liability on the $40,000 note to the bank, and was assisting in the creation of a fictitious relationship on the books of the bank (see Hargreaves v. United States (C.C.A.) 75 F.(2d) 68), Greenberg got the benefits of the transaction, received all of the funds advanced by the bank, and is, therefore, liable to the bank in the amount of the unpaid balance.

The defense of the statute of limitations is not good, as all payments made by Simon can be treated as an acknowledgment of the debt which revives the original promise to pay. It cannot be doubted that the defendant expected Simon to pay his note to Berenson, and with knowledge of Berenson's indorsement to the bank, and the assignment of the mortgage, it can hardly be doubted that the payments made by Simon were made with the full direction and authority of the defendant, and with his clear understanding that they would be so made. In the case of Buffinton v. Chase, 152 Mass. 534, 25 N.E. 977, 978, 10 L.R.A. 123, the court stated that "the doctrine is fully recognized that collections made upon collateral security are to be regarded as payments by the principal debtor at the time the money is received." Since the loan in this case was made to the defendant, and the Simon mortgage was put up as collateral security for that loan, then the moneys received pursuant to the payment of the collateral operate to toll the running of the statute of limitations.

The defendant's requests for rulings are allowed in so far as they are consistent with this opinion, and are denied insofar as they are inconsistent with this opinion.

Judgment is to be entered for the plaintiff in the sum of $11,500, with interest at the rate of 6 per cent. per annum from June 30, 1932.